UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GRUND & MOBIL VERWALTUNGS AG and CRYSTAL OF AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant. | Case No. MC23-56RSL <br><br> ORDER ON MOTION TO ENFORCE FOREIGN SUBPOENA & MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER |

This matter comes before the Court on plaintiffs' "Motion to Enforce Foreign Subpoena Issued to Amazon.com, Inc." (Dkt. # 1) and defendant's "Motion for Protective Order and to Quash Subpoena" (Dkt. # 12). The Court, having reviewed the submissions of the parties and the remainder of the record, finds as follows:

**I.    Background**

    **a.  Underlying Litigation**

This subpoena emanates from a lawsuit filed in the Eastern District of New York by plaintiffs Grund & Mobil Verwaltungs AG and Crystal of America, Inc. ("COA"), naming Lighthouse Wholesale, LLC and John Does 1-10 as defendants. *See* Dkt. # 1-1 at 57. Plaintiffs are members of Riedel glassworks, a conglomerate of affiliated companies that manufacture, distribute, market, and sell glassware products under several brands, including the RIEDEL brand, throughout the world. *Id.* at 59-60. Plaintiffs "permit RIEDEL-branded products to be sold in the United States only by COA, COA's affiliates, and by COA's authorized resellers." *Id.* at 62. As part of this authorized reseller program, "[p]laintiffs have implemented quality

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 1

control and customer service requirements throughout their authorized channels of distribution." *Id.* at 72-73. As part of plaintiffs' quality control efforts, they use "unique manufacturer identifying codes, including but not limited to manufacturer-generated QR codes and bar codes" to "track or verify the source of RIEDEL-branded products." *Id.* at 63-64.

Plaintiffs allege that Lighthouse Wholesale, without authorization, has sold – and is currently selling – products bearing the RIEDEL Marks through its "Lazy Lily" Amazon storefront. *Id.* at 66-67. Plaintiffs allege that they conducted a series of test purchases from the Lazy Lily storefront, and that the RIEDEL-branded products they received, "among other things, (a) had their protective outer-box packaging removed, (b) had their unique identifying bar and QR codes removed, defaced, or covered-up, (c) had been opened, manipulated, ripped, punctured, or otherwise damaged and then taped closed, and (d) had their internal protective padding rearranged and/or removed." *Id.* at 68. Based on these changes, "[p]laintiffs determined that the products that [Lighthouse Wholesale] was selling were materially different from genuine RIEDEL-branded goods." *Id.*

Defendant Lighthouse Wholesale has "taken the position that it was not responsible for any of the aforementioned material changes made to the RIEDEL-branded products sold via its Lazy Lily Amazon Storefront." Dkt. # 1 at 4 (citing Dkt. # 1-1 at 3). Instead, Lighthouse Wholesale "claims that Amazon's Fulfill[ment] by Amazon ("FBA") program, through which Amazon fulfills orders made from Defendant's Lazy Lily Storefront, requires it to affix Amazon bar code stickers over Plaintiffs' manufacturer-created QR codes." *Id.* Lighthouse Wholesale also "claims that Amazon is responsible for materially altering the RIEDEL-branded products sold via Defendant's Lazy Lily Storefront by, among other things, affixing Amazon bar code stickers over Plaintiffs' manufacturer-created QR codes." *Id.*[1]

---

[1] Amazon sellers, like Lazy Lily, who participate in the Fulfillment by Amazon program must affix their products with certain Amazon labels, including barcodes. *FBA Product Barcode Requirements*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 2

### b. Document Subpoena

In order to gather more information about this potential defense, plaintiffs served a subpoena on non-party Amazon.com on June 24, 2022. Dkt. # 1-1 at 126-31. The subpoena requested that Amazon produce documents responsive to seven topics, including "[d]ocuments and communications concerning, referring to, or relating to . . . Defendant's actual or alleged violation or infringement of the intellectual property rights of any person or entity between July 15, 2015 and present date." *Id.* at 128-29.

Amazon responded to the Document Subpoena by amended objections and responses dated November 16, 2022. Dkt. # 1-1 at 4. Amazon also made seven document productions, which "identify Riedel test purchases, infringement complaints, routine communications between Amazon and Defendant, customer communications regarding particular products, customer communications directed to Amazon, customer review information, photographs, storefront information, and shipment and product-level FBA labeling selections made by Defendant." Dkt. # 5 at 3. Within these documents, Amazon produced "a comprehensive spreadsheet indicating whether Defendant selected the Merchant label option or Amazon label service for each shipment of its Riedel products during the relevant time period." *Id.* at 6-7. Also included in Amazon's document production were "images of a Riedel Crystal Apple Decanter from Defendant's inventory that was stored in Amazon's warehouses." Dkt. # 1-1 at 4.

### c. Deposition Subpoena

On April 3, 2023, plaintiffs served a second subpoena on Amazon, commanding Amazon to designate a corporate representative to appear for a deposition on April 28, 2023. Dkt. # 1-1 at 14-18. The subpoena noticed thirteen topics for the Rule 30(b)(6) deposition:

> 1. All RIEDEL-Branded Products for which Defendant has selected the Merchant label option at any point between January 1, 2019 and present date, thereby electing to label the FBA shipments sent to Amazon itself, as

---

201100910?ref=mpbc_201100970 (last visited Aug. 8, 2023). Sellers can either apply barcode to individual products themselves, or have "Amazon apply those barcode labels for [them] for a per-item fee." *FBA Label Service*, Amazon Seller Central, https://sellercentral.amazon.com/help/hub/reference/external/200483750?locale=en-US (last visited Aug. 8, 2023).

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 3

referenced in Amended Response to Request No. 4 to Amazon's [Document Subpoena Response] attached hereto as Exhibit 1.

2. All RIEDEL-Branded Products for which Defendant has elected to pay Amazon for its Amazon Label Service at any point between January 1, 2019 and present date, as referenced in Amended Response to Request No. 4 to Amazon's [Document Subpoena Response] attached hereto as Exhibit 1.

3. Whether Amazon's FBA program guidelines about labeling and barcodes required Defendant to remove or cover-up Plaintiffs' QR codes affixed to the RIEDEL-Branded Products sold by Defendant through Amazon's FBA program.

4. The form and condition of the Riedel Apple Decanter (ASIN B00I9YSYG6) depicted in the photographs attached hereto as Exhibit 2 as received by Amazon from Defendant or others for sale on the Lazy Lily Storefront, including but not limited to whether such product had the Amazon FBA sticker/barcode affixed on top of Plaintiffs' QR code as depicted in Page No. AMZN_000010 thereof.

5. Whether Defendant selected the Merchant label option for the Riedel Apple Decanter depicted in the photographs attached hereto as Exhibit 2, thereby electing to supply Amazon with such product inclusive of Amazon's FBA sticker/barcode affixed to it.

6. Whether Defendant selected the Merchant label option for the Riedel Amadeo Decanter identified in the document attached hereto as Exhibit 3, thereby electing to supply Amazon with such product inclusive of Amazon's FBA sticker/barcode affixed to it.

7. Whether Defendant selected the Merchant label option for the Riedel Amadeo Decanter identified in the document attached hereto as Exhibit 4, thereby electing to supply Amazon with such product inclusive of Amazon's FBA sticker/barcode affixed to it.

8. Whether Defendant selected the Merchant label option for the any of the 17 Riedel Ouverture Wine Glass and Decanter Sets identified in the document attached hereto as Exhibit 5, thereby electing to supply Amazon

with such products inclusive of Amazon's FBA stickers/barcodes affixed to them.

9. Whether Defendant selected the Merchant label option for any of the 14 Riedel Amadeo Decanters identified in the document attached hereto as Exhibit 6, thereby electing to supply Amazon with such products inclusive of Amazon's FBA stickers/barcodes affixed to them.

10. Whether Defendant selected the Merchant label option for the Riedel Amadeo Decanter identified in the document attached hereto as Exhibit 7, thereby electing to supply Amazon with such product inclusive of Amazon's FBA sticker/barcode affixed to it.

11. The process though which an Amazon Merchant, which selects the Merchant label option thereby electing to label the FBA shipments sent to Amazon itself, as referenced in Amended Response to Request No. 4 to Amazon's [Document Subpoena Response] attached hereto as Exhibit 1, is provided with the Amazon FBA stickers/barcodes that are affixed to FBA shipments sent to Amazon.

12. Whether Defendant was provided with the Amazon FBA stickers/barcodes that were affixed onto the RIEDEL-Branded Products sold by Defendant through Amazon's FBA program, and if so, how Defendant was provided with such stickers/barcodes.

13. The addresses from which Amazon received all RIEDEL-Branded Products held, shipped or sold via Amazon's FBA program and for each such address, whether the RIEDEL-Branded Products were supplied with Amazon's FBA sticker/barcode affixed onto such products.

*Id.* at 16-18. On April 14, 2023, Amazon served its objections to the Deposition Subpoena. *Id.* at 147-58.

### d. Motion to Enforce Foreign Subpoena

On April 28, 2023, counsel for plaintiffs and Amazon conducted a meet-and-confer telephone call. Dkt. # 1-1 at 11. At this meet and confer, Amazon's counsel expressed the view that the subpoenaed deposition was unnecessary given Amazon's prior document production and that complying with the subpoena would place a substantial burden on Amazon, as the

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 5

company would have to prepare a corporate witness to testify regarding the "broad swath of data, policies, and documents Amazon had produced to date." Dkt. # 12 at 3. As an alternative, Amazon offered to provide a "declaration authenticating the documents it previously produced and/or to explore producing a substantive declaration." *Id.* Counsel for plaintiffs maintained that a deposition was necessary, in part because "the scope of testimony Plaintiffs need from Amazon far exceeds the mere authentication of documents" and because counsel had concerns about the admissibility of a declaration at trial. *Id.*; Dkt. # 1-1 at 11.

Following this meet and confer, plaintiffs filed the instant motion to enforce the subpoena. Plaintiffs argue that the "testimony and materials sought through the subpoenas at issue are critical to the underlying litigation" and that the "deposition subpoena is not burdensome and is proportional to the needs of the New York action." Dkt. # 1 at 3, 5. Amazon opposes the motion to compel on grounds identical to those raised in its motion for a protective order and to quash the subpoena, discussed below. *Compare* Dkt. # 5 at 2 *with* Dkt. # 12 at 6.

### e. Protective Order

On July 6, 2023 – after plaintiffs filed the motion to enforce but before Amazon responded – Amazon reached out to plaintiffs for another meet and confer, again offering to provide a substantive declaration in lieu of corporate representative for deposition. Dkt. # 7 at 2. When plaintiffs refused, Amazon agreed to review specific questions that plaintiffs planned to ask in the non-party deposition. *Id.* These questions sought, *inter alia*, clarification on the meaning of specific terms used in the spreadsheets Amazon produced, information about how the spreadsheet was created and maintained, whether Amazon affixed the Amazon barcode sticker to specific products received by Amazon from defendant, whether Amazon's policies or FBA program guidelines required defendant to affix the Amazon barcode sticker over plaintiffs' QR codes, and information on how sellers procure Amazon FBA stickers/barcodes. Dkt. # 11-1 at 2-3. After reviewing the proposed questions, Amazon's counsel suggested that plaintiff and defendant stipulate to the admissibility of written answers, which Amazon would be willing to provide in declaration form or otherwise. Dkt. # 12 at 4. Amazon indicated that if plaintiffs had

any remaining topics they believed required live testimony, Amazon would agree to consider a narrow deposition. *Id.* Plaintiffs declined this offer. *Id.*; *see also* Dkt. # 15 at 6-7.

On July 21, 2023, Amazon moved to quash the subpoena and for a protective order precluding Amazon's Rule 30(b)(6) deposition. Dkt. # 12. Amazon argues that "[p]laintiff's demand for non-party Amazon to sit for a corporate 30(b)(6) deposition is unreasonably duplicative and unduly burdensome." *Id.* at 6.

## II.    Legal Standard

District courts have significant discretion to control discovery. *See* Fed. R. Civ. P. 26(b)(1); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). However, both litigants and third parties are subject to discovery under the Federal Rules of Civil Procedure. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30-35 (1984). Rule 26(b)(1) provides that parties

> [m]ay obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 45 governs discovery of non-parties by subpoena. The scope of discovery under Rule 45 is the same as under Rule 26(b). *See* Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970); *Lozano v. Does I-X*, No. C22-1477JLR, 2022 WL 16744880, at *3 (W.D. Wash. Nov. 7, 2022). Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P.

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 7

1  26(b)(2)(C); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (limitations set forth
2  in Rule 26(b)(2)(C) apply to discovery served on non-parties by subpoena).

3      Here, plaintiffs have filed a motion to enforce their deposition subpoena. On a motion to
4  compel discovery, the moving party carries the "initial burden of demonstrating relevance."
5  *Rockemore v. Aguirre*, No. C21-550VAP-ADS, 2022 WL 18397379, at *1 (C.D. Cal. July 1,
6  2022) (citation omitted). Additionally, when discovery is sought by subpoena, the party issuing
7  a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person
8  subject to a subpoena." *See* Fed. R. Civ. P. 45(d)(1). Once relevance has been established, the
9  burden then shifts to the non-moving party to show that discovery should be disallowed and to
10 support its objections with evidence. *Rockemore*, 2022 WL 18397379, at *1 (citations omitted);
11 *see also Bryant v. Ochoa*, No. C07-200JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14,
12 2009).

13     Additionally, Amazon has moved to quash the subpoena and seek a protective order from
14 the Court. Dkt. # 12. A court must quash or modify a subpoena that subjects a person to undue
15 burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). "On a motion to quash a subpoena, the moving party
16 has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must
17 demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. MC12-
18 80237CRB-NC, 2013 WL 4536808, *4 (N.D. Cal. Aug. 22, 2013) (internal citation omitted).

19     In determining whether a subpoena poses an undue burden, the Court must "weigh the
20 burden to the subpoenaed party against the value of the information to the serving party." *Amini
21 Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014)
22 (citations and quotation marks omitted); *see also Mount Hope v. Bash Back!*, 705 F.3d 418, 428
23 (9th Cir. 2012) ("[T]he burdens of complying with the subpoena are the ones that count.").
24 Courts also consider the relevance of the requested information and the breadth or specificity of
25 the discovery request. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005);
26 *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)
27 (explaining that "if the sought-after documents are not relevant . . . then any burden whatsoever

28 ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 8

imposed would be by definition 'undue'"). Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party. *See, e.g.*, *Moon*, 232 F.R.D. at 638. District courts have broad discretion to determine whether a subpoena is unduly burdensome. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).

District courts may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," that would result from the disclosure of certain discovery. Fed. R. Civ. P. 26(c)(1)(A). The party seeking a protective order has the burden of proving that good cause exists for the entry of the order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Here, because Amazon argues that is entitled to both a protective order and quashing of the subpoena on the grounds that the deposition subpoena presents an undue burden, the same analysis applies both requests. *See, e.g.*, *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 495-96 (C.D. Cal. 1981). Much like Rule 45(d)(3), "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times*, 467 U.S. at 36.

### III. Analysis

The Court will first address the parties' arguments regarding Amazon's non-party status, the timeliness of Amazon's motion for a protective order, and the admissibility of the sought discovery. It will then turn to the question of whether plaintiffs' deposition subpoena imposes an undue burden on Amazon.

#### A. Amazon's Non-Party Status

At the outset, the Court acknowledges that "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009) (citations omitted). Specifically, "[w]hile discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery." *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (also noting that "[t]here appear

to be quite strong considerations indicating that discovery would be more limited to protect [non-]parties from harassment, inconvenience, or disclosure of confidential documents" (citation and quotation marks omitted)). As the Ninth Circuit has recognized, "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

Plaintiffs argue that although Amazon is not a party to the underlying litigation, the company is "not an innocent party that has been unjustly dragged into an alien dispute between unfamiliar parties. At best it is vicariously liable for Defendant's infringement of the RIEDEL trademarks, and at worst it is a co-conspirator." Dkt. # 15 at 2. The Court is unpersuaded. It is well established that a "plaintiff is the master of his complaint." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). Accordingly, plaintiffs are responsible for naming those whom they wish to hold responsible for their alleged injuries as defendants in their complaint. Here, plaintiffs have chosen not to name Amazon as a defendant. The Court will thus consider Amazon's non-party status in conducting its undue burden analysis.

**B. Timeliness of Motion**

Plaintiffs also argue that "[t]his Court need not even consider whether Amazon has met its burden of demonstrating the need for protection from discovery because its herein motion is untimely." Dkt. # 15 at 9. Specifically, plaintiffs contend that "failure to seek a protective order before the date set for discovery precludes subsequent objection and constitutes grounds for denying the protective order." *Id.* Here, the "Deposition Subpoena ordered Amazon to produce a corporate representative to be deposed on April 28, 2023," however, Amazon did not file its motion for protective order and to quash until July 21, 2023. *Id.*

Rule 26(c), addressing protective orders, contains no time constraints for a request. Fed. R. Civ. P. 26(c). Plaintiffs cite to no Ninth Circuit authority for the proposition that a request for protective order is only timely if made prior to the date set for the discovery. *See* Dkt. # 15 at 9-10. Furthermore, the sole Ninth Circuit case plaintiffs identify, a district court opinion from this

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 10

court, simply recognized that "a request for a protective order may be regarded as untimely 'when it was first raised in a motion for reconsideration of an order compelling production and after the date the documents were to be produced.'" *Lexington Ins. Co. v. Swanson*, No. C05-1614MJP, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007). Indeed, the *Lexington* opinion noted that the 1970 amendments to the Federal Rules of Civil Procedure removed any explicit timeliness requirement from a motion for a protective order, although "courts still consider the timeliness of a motion and look to all of the circumstances in determining whether the motion is timely." *Id.* (quoting 8 Charles A. Wright et al., *Federal Practice & Procedure* § 2035 (2d ed. 1994)).

Here, Amazon served objections to the subpoena on counsel for plaintiffs on April 14, 2023, engaged in negotiations, and on May 2, 2023, produced a spreadsheet that addressed many of the topics noticed in the subpoena. *See* Dkt. # 18 at 2-3. Amazon assumed that the spreadsheet had provided plaintiffs with the necessary information, and did not hear from plaintiffs again until it received plaintiffs' motion to enforce the foreign subpoena on June 29, 2023. Amazon filed its motion for a protective order the same week that it responded to plaintiffs' motion to enforce. Given this background, the Court finds Amazon's request was made within a reasonable time and is timely. Fed. R. Civ. P. 26(c).

**C. Admissibility**

Finally, plaintiffs argue that written responses from Amazon will be insufficient because a declaration would not be admissible evidence at trial. Dkt. # 10 at 8. Amazon responds that even if plaintiffs are permitted to take a Rule 30(b)(6) deposition of an Amazon corporate representative, it is unlikely that plaintiffs will be permitted to admit the deposition into evidence. Dkt. # 12 at 12-13. Specifically, Amazon points out that federal courts in New York – where the underlying action has been brought – have taken a "conservative approach" to admitting 30(b)(6) testimony, given the potential personal knowledge and hearsay issues that arise when a deponent is asked to speak on matters within the broader corporation's knowledge. Dkt. # 5 at 12; *see also Fed. Trade Comm. v. Vyera Pharmaceuticals, LLC*, No. C20-706DLC,

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 11

2021 WL 5300019, at *2 (S.D.N.Y. Nov. 15, 2021); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. C17-598BKS-CFH, 2022 WL 4333555, at *2-3 (N.D.N.Y. Sept. 19, 2022). Plaintiffs argue that the admissibility of Rule 30(b)(6) depositions question is unsettled in the Second Circuit and direct the Court to another district court opinion, *Abbott Laboratories v. Feinberg*, No. C18-8468LGS, 2020 WL 7706571, at *1-2 (S.D.N.Y. Oct. 15, 2020), in which the court permitted defendants to designate portions of a 30(b)(6) deposition.

While plaintiffs' assertion that a 30(b)(6) deposition transcript would be admissible at trial appears questionable at best,[2] the Federal Rules of Civil Procedure expressly provide that information within the proper scope of discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Accordingly, the relevant question for this Court is not whether the deposition will be admissible at trial, but whether it is relevant and proportional to the needs of the case.

### D. Undue Burden Analysis

Both plaintiffs' motion to compel and Amazon's motion to quash and for a protective order focus on the issue of whether plaintiffs' deposition subpoena imposes an undue burden on

---

[2] Specifically, the situation presented in *Abbott Laboratories* – the case cited by plaintiffs – was quite distinct from the situation here. In *Abbott Laboratories*, defendants sought to designate the deposition testimony of *plaintiff's own* 30(b)(6) designee. 2020 WL 7706571, at *1-2. As courts dealing with the admissibility of Rule 30(b)(6) depositions have remarked, "[w]hen courts allow one party to admit Rule 30(b)(6) testimony from the opposing party, little concern arises about whether the opposing party was able to meaningfully cross-examine the statements of its own representative." *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) (citing Fed. R. Evid. 801(d)(2) (defining admissions by a party-opponent as non-hearsay)); *see also* Fed. R. Civ. P. 32(a)(3) (explaining that "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)"). In contrast, "[t]he dangers of testimony based on corporate knowledge multiply where the Rule 30(b)(6) witness is a third party rather than an opposing party" because "[t]he concern about meaningful cross-examination is much greater with third-party Rule 30(b)(6) testimony; if the witness lacks personal knowledge, there may be little chance to meaningfully cross-examine the witness at the deposition." *Id.*

Here, given that Amazon would be a third-party deponent in the case, it appears unlikely that deposition testimony would be deemed admissible in light of the relevant personal knowledge and hearsay issues.

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 12

Amazon. *See* Dkts. # 5, 10 (briefing addressing plaintiffs' motion to enforce the subpoena); Dkts. # 12, 15, 17 (briefing addressing Amazon's motion to quash and for a protective order). Accordingly, by resolving the undue burden issue the Court may dispose of both parties' motions.

### a. Deposition Topics 1-2 and 5-10

While deposition topics 1-2 and 5-10 appear to be addressed at least in part by Amazon's prior document production, the first 24 questions on plaintiffs' counsel's list focus on interpreting and understanding the spreadsheet produced by Amazon in its document production. The information contained in this spreadsheet – including whether defendant selected the Amazon label service or elected to affix the labels itself on particular orders – is relevant to the underlying litigation. Amazon argues that the information in the "comprehensive spreadsheet" is self-explanatory. Dkt. # 12 at 6-7. However, plaintiffs stridently argue that the spreadsheet is not, in fact, self-explanatory and that interpretation from an Amazon representative is necessary. *See* Dkt. # 10 at 4-5. Amazon's failure to provide the Court with a copy of the "comprehensive spreadsheet" makes it difficult to determine how self-explanatory it is, but given the relevance of the information contained in the spreadsheet and the nature of plaintiffs' proposed questions, the Court concludes that compelling Amazon to produce a corporate designee to answer plaintiffs' proposed questions 1 through 24 would not constitute an undue burden.

### b. Deposition Topic 3-4 and 11-12

Deposition topics three and four, and plaintiffs' proposed questions 25 through 29, concern Amazon's FBA program guidelines about labeling and barcodes. While Amazon argues that the relevant guidelines and policies sought by plaintiffs are publicly available, *see* Dkt. # 12 at 9-10, plaintiffs seek not only the policies themselves, but Amazon's application and interpretation of these policies, *see* Dkt. # 10 at 6-7. Amazon argues that "any such testimony would inherently be opinion testimony rather than fact testimony, and it is an 'abuse of the subpoena power' to require a 'non-party . . . to act as an unpaid expert witness.'" Dkt. # 12 at 10 (quoting *Convolve, Inc. v. Dell, Inc.*, No. C10-80071WHA, 2011 WL 1766486, at *5-6 (N.D.

Cal. May 9, 2011)). However, the cases Amazon cites for this proposition are distinguishable. Here, plaintiffs are not asking Amazon to opine on the broader industry or market, *cf. Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-814 (9th Cir. 2003) (quashing subpoena asking third-party to provide information on "the market for Forsythe's works at issue in the [Los Angeles federal district court] action, including the characteristics of 'art consumers'"); *Verinata Health, Inc. v. Sequenom, Inc.*, No. C12-865SI, 2014 WL 2582097, at *3 (N.D. Cal. June 9, 2014) (quashing subpoena asking third-party to opine on whether "other tests . . . are acceptable substitutes based on [the third-party's] experience in the marketplace" and where defendant's sales would have gone "based on [the third-party's] unique understanding of the market"); *Updateme Inc. v. Axel Springer SE*, No. C17-5054SI-LB, 2018 WL 5734670, at *4 (N.D. Cal. Oct. 31, 2018) (quashing subpoena that sought to depose a third-party about "(1) his understanding of Silicon Valley norms regarding pitch meetings and (2) his contemporaneous understanding of the uniqueness of the plaintiff's ideas"), nor are they asking Amazon to conduct complex or costly analysis on their behalf, *cf. Convolve*, 2011 WL 1766486, at *1-2 (quashing subpoena demanding that a third-party "produce and set up one prior-art hard drive and related software and measuring equipment in a configuration that will allow [defendant] to demonstrate that its hard drive could be controlled by utility software to run in either performance or acoustic mode"); *In re eBay Seller Antitrust Litig.*, No. C09-735RAJ, 2009 WL 5205961, at *3 (W.D. Wash. Dec. 23, 2009) (quashing subpoena that would have required third-party Amazon "to turn over market analyses that eBay could conduct on its own").

Instead, plaintiffs simply ask Amazon to apply its publicly available policies to a specific set of facts. *See* Dkt. # 10 at 7. Questions about a company's own policies and guidelines are well within the ambit of a 30(b)(6) deposition. *See, e.g.*, *Munoz v. Giumarra Vineyards Corp.*, No. C09-703AWI-JLT, 2015 WL 5350563, at *10-11 (E.D. Cal. Sept. 11, 2015) (citing 30(b)(6) deposition testimony in which the corporate deponent discussed the company's meal break policies); *In re Hitachi Television Optical Block Cases*, No. C08-1746 DMS NLS, 2011 WL 3563781, at *3 (S.D. Cal. Aug. 12, 2011) (granting plaintiffs' motion requesting that defendants

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 14

produce a Rule 30(b)(6) witness to testify about company policies regarding preservation and production of electronic data); *Sara Lee*, 276 F.R.D. at 503 (explaining that "matters about which the corporation's official position is relevant, such as corporate policies and procedures, or the corporation's opinion about whether a business partner complied with the terms of a contract" are "topics that are particularly suitable for Rule 30(b)(6) testimony"). The Court finds that plaintiffs have demonstrated that the information sought is relevant to the underlying litigation and that many of plaintiffs' questions cannot be adequately addressed by anyone other than Amazon.

While the Court finds the noticed deposition topics potentially overbroad, it concludes that compelling Amazon to produce a corporate designee to answer plaintiffs' proposed questions 25 through 29 would not constitute an undue burden.

### c.  Deposition Topics 11 & 12

Deposition topics 11 and 12, and the corresponding proposed questions 30 through 32, ask for information about the process by which an Amazon merchant acquires the labels required by the Amazon FBA program. Amazon argues that "information regarding the sourcing and application of Defendant's FBA stickers could and should be obtained directly from Defendant" and that "an Amazon corporate representative would not have the requisite knowledge to testify on this topic." Dkt. # 12 at 11. Plaintiffs, in turn, argue that they have made "extensive efforts . . . to elicit documents and information from Defendant," but have been unable to do so. Dkt. # 10 at 7-8.

"Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp.*, 300 F.R.D. at 410 (collecting cases). Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, No. C13-64EJL, 2013 WL 6446704, at *4 (D. Idaho Dec. 5, 2013). Here, while the Court agrees that the information sought could be produced by the defendant in the underlying litigation, Amazon has failed to demonstrate that answering

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 15

plaintiffs' proposed questions would impose an undue burden. If, as Amazon suggests, it truly has no insight into how defendant sourced the labels it used in the Amazon FBA program, it can simply say as much to plaintiffs in the deposition. *See* Dkt. # 12 at 11-12.

While the Court finds the noticed deposition topics potentially overbroad, it concludes that compelling Amazon to produce a corporate designee to answer plaintiffs' proposed questions 30 through 32 would not constitute an undue burden.

### d. Deposition Topic 13

Deposition topic 13 and the corresponding proposed question 33 ask Amazon to provide "[t]he addresses from which Amazon received all RIEDEL-Branded Products held, shipped or sold via Amazon's FBA program and for each such address, whether the RIEDEL-Branded Products were supplied with Amazon's FBA sticker/barcode affixed onto such products." Dkt. # 6 at 11. The Court finds this request overbroad. The underlying litigation focuses on the activities of one particular Amazon seller, specifically whether and how this particular seller "materially altered" the packaging on RIEDEL-branded products. *See* Dkt. # 1-1 at 57-88. Plaintiffs have failed to explain why they require information concerning *all* RIEDEL-branded products sold through Amazon's FBA program. Accordingly, the Court finds that enforcing the deposition subpoena on Amazon as to this topic would constitute an undue burden.

In light of the discussion above, the Court grants plaintiffs' motion in part. Amazon must comply with plaintiffs' request for a 30(b)(6) deposition. However, the Court also grants Amazon's motion in part – specifically, the Court enters a protective order limiting Amazon's 30(b)(6) deposition to plaintiffs' proposed questions 1 through 32 and modifies the subpoena accordingly.

## VI. Conclusion

For all the foregoing reasons, plaintiffs' motion to enforce foreign subpoena (Dkt. # 1) is GRANTED IN PART. Amazon must comply with the deposition subpoena by producing a corporate designee for deposition within twenty-one (21) days of this Order.

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 16

Additionally, Amazon's motion to quash the subpoena and for a protective order (Dkt. # 12) is GRANTED IN PART. The Court enters a protective order limiting plaintiffs' deposition to questions 1 through 32 of the proposed questions plaintiffs' counsel previously shared with Amazon. The subpoena is modified to reflect this limited scope.

IT IS SO ORDERED.

DATED this 28th day of August, 2023.

Robert S. Lasnik
United States District Judge

ORDER ON MOTION TO ENFORCE FOREIGN
SUBPOENA & MOTION TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER - 17